IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN WALSH, III,** | : | **Civil No. 3:15-CV-2012** |
| | : | |
| **Plaintiff,** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LAURE WALSH, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This is a *pro se* civil action brought by John Walsh, against his estranged spouse, Laure Walsh, her attorney, Brain Cali, another attorney, Kurt Lynott, the City of Scranton Housing Inspectors, the state judge who is residing over Walsh's divorce action and the court of common pleas itself. (Doc. 1.) Walsh's complaint relates to an on-going domestic relations case, and alleges that his ex-wife illegally gained access to the marital property and took photographs of the property. This incident is plainly part of the pending divorce litigation since Walsh asserts that the photos were presented in court and there was testimony regarding this incident in these divorce proceedings. (Id.) After alleging that this action in some fashion violated his rights

1

under the Fourth, Fifth and Eleventh Amendments to the United States Constitution, Walsh seeks $100,000 in damages from the defendants.  (Id.)

Along with this complaint the plaintiff filed a motion for leave to proceed *in forma pauperis*.  (Doc. 2.)  We will grant this motion for leave to proceed *in forma pauperis*, (Doc. 2.), but having carefully reviewed this complaint, we conclude that the pleading fails to state a claim upon which relief can be granted.  Accordingly, for the reasons set forth below, it is recommended that the complaint be dismissed.

## II.   Discussion

### A.   Legal Standards Governing Sufficiency of Civil Complaints

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.  See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted.  This statutory text

2

mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, for the reasons set forth below, Walsh's complaint is fatally flawed in the following respects and should be dismissed.

### B.    The Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can be Granted

Applying these legal benchmarks, we find that in this case the plaintiffs' *pro se* complaint is subject to dismissal for failure to state a claim upon which relief can be granted.  Indeed, the initial review of the plaintiffs' complaint has identified the following fatal deficiencies in this pleading.

### 1.    While a State Divorce Case is Pending This Court Should Abstain From Intervening in This Matter

At the outset, this complaint, which invites this Court to intervene in a pending state divorce case, runs afoul of another settled tenet of federal law, the <u>Younger</u> abstention doctrine.  This doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971)."  <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

"A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's complaint reveals that all of the legal prerequisites for Younger abstention are present in this case. First, it is evident that there are on-going state domestic relations proceedings pending in this case. Second, it is also

apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate these constitutional issues in the first instance in their pending state case. See Lazaridis v. Wehmer, 591 F.3d 666, 670. (2010) (explaining that Younger requires only an opportunity to present federal claims in state court, and the burden rests with plaintiff to show that state procedural law bars presentation of the claims). Finally, it is also evident that the state proceedings implicate important state interests, since this matter involves enforcement of state laws relating to domestic relations. Such domestic relations cases are matters of paramount concern to the state. Wattie-Bey v. Attorney General's Office, 424 F. App'x 95, 97 (3d Cir. 2011) citing Lazaridis v. Wehmer, 591 F.3d 666, 670. (2010); Moore v. Sims, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ( "[f]amily relations are a traditional area of state concern."); Winston v. Children & Youth Services, 948 F.2d 1380, 1399 (3d Cir.1991) (Garth, J. dissenting) (observing that "Pennsylvania ... clearly has a strong interest in administering its child welfare procedures and in adjudicating controversies that arise from that administration") See Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 5707366, at *1 (M.D. Pa. Oct. 18, 2013) aff'd, 572 F. App'x 94 (3d Cir. 2014).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on

Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Given the important state interests that exist in law enforcement in this field, and recognizing that the state courts are prepared to fully address the merits of this matter in the near future, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time. Wattie-Bey v. Attorney General's Office, 424 F. App'x 95, 97 (3d Cir. 2011); Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002); Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 5707366, at *1 (M.D. Pa. Oct. 18, 2013) aff'd, 572 F. App'x 94 (3d Cir. 2014). Therefore, it is recommended, consistent with the Younger doctrine, that this Court abstain from intervening in this pending state divorce case.

### 2.   Walsh May Not Sue Private Parties for Civil Rights Violations

Further, Walsh's complaint seeks to sue several private parties, including his ex-wife and her attorney, for federal civil rights violations. This he may not do.

It is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution

and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).   Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are:  *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

<u>Boykin v. Bloomsburg University of Pennsylvania</u>, 893 F.Supp. 409, 416 (M.D.Pa. 1995), <u>aff'd</u>, 91 F3d 122 (3d Cir. 1996)(emphasis added).  Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights.  To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors.  <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs like Walsh, who may invite the courts to consider lawsuits against private parties, including private attorneys representing a client in some other litigation.  With respect to this state action requirement, it is well-settled that the conduct of an attorney representing a client in a state case does not by itself rise to the level of state action entitling a plaintiff to bring a federal civil rights actions against opposing counsel or the opposing party in this private lawsuit.  See, e.g.,  West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993).  Therefore, in the absence of some further well-pleaded facts, Walsh may not convert his dissatisfaction with the performance of this private attorney in this divorce case into a federal civil rights lawsuit.

### 3.   The Judge and Court Named in This Lawsuit Are Entitled to Immunity

Furthermore, in his complaint Walsh sues a state judge and the county court of common pleas.  This claim fails for two reasons.  First, to the extent that the plaintiff seeks in his complaint to hold this judicial officer, and the county where she presides, personally liable for civil rights violations, it is well-settled that judges are individually cloaked with immunity from liability.  The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and

prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities.  In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20  (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.  In this regard, the broad scope of this immunity was clearly articulated by this Court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)).  "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages."  Id. (citations omitted).  Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007).  Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

Since the judge is immune from any form of civil liability, it follows that the county court of common pleas cannot be held vicariously liable for judicial acts by this judge, acts which cannot give rise to direct civil liability for this judicial actor.

Furthermore, the state courts are defined by statute as arms of the state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

14

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment. <u>See, e.g.,</u> <u>Walters v. Washington County</u>, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); <u>Van Tassel v. Lawrence County Domestics Relations Section</u>, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. These longstanding, constitutionally-grounded immunities also directly apply here and prevent the plaintiff from maintaining this civil action for damages against the defendants he has named in his complaint, a state judge and the state courts.

4.        **The Rooker-Feldman Doctrine Prevents Walsh from Re-litigating These Claims**

In addition, the <u>Rooker-Feldman</u> doctrine applies here and bars further consideration of this matter, which arises out of a state domestic relations case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Walsh, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  <u>See also</u> <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions."  <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts,

reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court

adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547

(3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine,
> holding that it "is confined to cases of the kind from which the doctrine
> acquired its name:  cases brought by state-court losers complaining of
> injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and
> rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic
> Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance
> v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059
> (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently

recognized that the Rooker-Feldman doctrine prevents federal judges from

considering civil rights lawsuits which seek to re-examine state domestic relations

court rulings that are presented "by state-court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced."

Kwasnik v. Leblon, 228 F. App'x  238, 242 (3d Cir. 2007).  In such instances, the

federal courts have typically deferred to the state court domestic relations decisions,

and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings.  See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x  238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998);  Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the Rooker-Feldman doctrine in the particular field, Walsh's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed.  Kwasnik v. Leblon, 228 F. App'x  238, 242 (3d Cir. 2007).

18

### 5.   Walsh Fails to State a Claim Against Defendant Kurt Lynott

Finally, Walsh names another attorney, Kurt Lynott, as a defendant in the caption of this case, but makes no factual allegations regarding this defendant in the body of his pleadings.  This curious pleading style of naming a defendant in the caption of the case, but not describing his conduct by name in the body of his pleading, is legally insufficient to state a claim.  See Walthour v. Child & Youth Servs., 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010)(dismissing claims against defendants only identified in exhibits attached to complaint).  This cursory style of pleading is plainly inadequate to state a claim against the individual defendants and compels dismissal of this defendant.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

### C.   The Complaint Should Be Dismissed with Prejudice

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the

current complaint fails to state a viable civil rights cause of action for reasons that are fundamental and cannot, in our view, be corrected through more artful pleading. Since the plaintiffs cannot readily correct the deficiencies identified in the complaint, and the factual and legal grounds proffered in support of the complaint make it clear that the plaintiffs have no right to relief in federal court at this time, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

While federal law compels this ruling we recognize the concerns that motivate plaintiff in bringing this action. We are simply unable to grant them the relief they seek. A federal district court cannot act as a state appellate court in domestic relations matters. Rather, the plaintiff should understand that he must turn to the state trial and appellate courts to address these concerns in the first instance. Those courts stand ready to hear, and decide, these issues.

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2.) is GRANTED but IT IS RECOMMENDED that the complaint be dismissed for the failure to state a claim upon which relief can be granted.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of October 2015.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge